1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### -oOo-

10  UNITED STATES OF AMERICA,           )
                                        )
11              Plaintiff,              )      2:06-CR-00186-PMP-PAL
                                        )
12  vs.                                 )      <u>ORDER</u>
                                        )
13  POWER COMPANY, INC., doing          )
    business as THE CRAZY HORSE TOO,    )
14  and FREDERICK JOHN RIZZOLO,         )
                                        )
15              Defendants.             )
                                        )
16  _____  )

17          Before the Court for consideration is the United States of America's Motion to

18  Stay the Expiration of the Exotic Dance Use Permit and Tavern License for the Crazy

19  Horse Too (Doc. #198), filed June 4, 2008.  Arguments were heard on this fully

20  briefed motion on June 23, 2008.

21          On June 1, 2006, Defendants Power Company, Inc. ("Power Company") and

22  Frederick John Rizzolo ("Rizzolo") entered Plea Agreements with the United States to

23  resolve certain criminal charges against Defendants, in conjunction with related Plea

24  Agreements with several other individuals.  (Plea Mem. [Doc. #7], Plea Mem. [Doc.

25  #8].)  Defendant Rizzolo pled guilty to count two of the Information, which charged

26  conspiracy to defraud the United States in violation of 18 U.S.C. § 371.  (Plea Mem.

27  [Doc. #8] at 2.)  Defendant Power Company pled guilty to count one which charged

28  conspiracy to participate in an enterprise engaged in racketeering activity in violation

of 18 U.S.C. § 1962(d).  (Plea Mem. [Doc. #7] at 3.)  Pursuant to the Plea Agreements, Defendants agreed to forfeit $4,250,000 to the United States under 18 U.S.C. § 1963(a).  (Id. at 5.)  The Plea Agreements also required Power Company to make restitution to Kirk and Amy Henry in the amount of $10,000,000 upon the sale of the Crazy Horse Too, a strip club.  (Id. at 7.)  Defendants further agreed as part of their Plea Agreements to sell the Crazy Horse Too within twelve months from the date Defendants entered their plea.  (Id. at 8.)  This Court subsequently entered an Order of Forfeiture (Doc. #12) forfeiting $4,250,000 to the United States.

Defendants did not sell The Crazy Horse Too within the one-year time frame. On August 15, 2007, the Court granted the United States' motion to substitute the Crazy Horse Too and the real property on which it sits as the forfeited assets, and decreed those assets forfeited to the United States.  (Order [Doc. #62]; Min. of Proceedings [Doc. #60]; United States of America's Mot. for this Court to Authorize the Substitution, the Forfeiture, & the Sale of the Substituted Assets & the Distribution of the Sale Proceeds [Doc. #58].)  As a result of the substitution of assets and proposed sale, various entities and individuals asserted an interested in the forfeited substitute assets and petitioned for an ancillary hearing to adjudicate their claims thereto.

The Court has adjudicated all ancillary claims, and on June 23, 2008, entered the First Amended Order of Forfeiture (Doc. #222) vesting in the United States all right, title, and interest in the forfeited Property.  The United States moves the Court under 18 U.S.C. § 1963(e) for a stay of the expiration of the Crazy Horse Too's liquor licence and exotic dance permit beyond June 30, 2008, on the ground that such an order is necessary to protect the United States' interest in the forfeited Property.  The United States argues that as a result of recent action taken by the Las Vegas City Council, and the provisions contained in Sections 19.16.010 and 19.16.030 of the Las

Vegas Municipal Code, the Crazy Horse Too will lose forever its ability to acquire a liquor license or an exotic dance permit from the City of Las Vegas at that location if the existing license and permit are allowed to expire on June 30, 2008.  The United States contends that if the license and permit for the Crazy Horse Too expires on June 30, 2008, the forfeited Property will lose substantial value, thereby diminishing the parties' ability to fulfill the requirements of the Plea Agreements entered June 1, 2006. The United States' Motion for Stay is joined by Defendants and by several parties who have asserted ancillary claims to the forfeited Property.  Interested Party the City of Las Vegas opposes the United States' motion (Doc. #210).

The City acknowledges that Section 1963(e) authorizes the Court, upon application of the United States, to enter orders to protect the interest of the United States in forfeited property.  The City argues, however, the Court should deny the United States' motion as it would usurp neutral local land use planning and zoning ordinances for the convenience and economic benefit of the United States and others who assert an interest in the ultimate sale of the forfeited Property.

The United States cites no case law in which a federal district court entered an injunction staying the revocation or expiration of a license issued under a facially neutral local ordinance pursuant to Section 1963(e).  The cases relied upon by the United States are not directly on point.  In United States v. Pelullo, the defendant attempted to claim bankruptcy and tried to include forfeited assets in the bankruptcy estate.  178 F.3d 196 (3d Cir. 1999).  When the United States Marshal sold the forfeited property, the defendant moved for a contempt sanction in the bankruptcy court, arguing the Marshal had violated the automatic stay.  The United States moved for a protective order in district court under Section 1963(e), and the district court enjoined the defendant from pursuing the bankruptcy case with respect to any forfeited asset.  The Third Circuit affirmed, holding that the assets forfeited to the United States

-3-

before the defendant filed for bankruptcy no longer belonged to the defendant, were not part of the his bankruptcy estate, and thus were not subject to the automatic stay.

In United States v. MacIness, the United States Court of Appeals for the Ninth Circuit held a district court has exclusive jurisdiction over forfeited property at least until the property is sold or otherwise disposed.  223 F. App'x 549, 552-53, 2007 WL 295451, *3 (9th Cir.  2007) (unpublished).  The Ninth Circuit concluded the district court was within its power to set aside a state law foreclosure sale initiated after the United States obtained the property through forfeiture.  Id.  These cases do not stand for the proposition that a district court may order, under Section 1963(e), a local government to continue a liquor license or an exotic dance permit, or otherwise make an exception to facially neural zoning laws.

While the grant of authority under Section 1963(e) is broad, the United States has not persuaded the Court that when Congress enacted Section 1963(e), it contemplated it was empowering federal courts to order a state or local government to continue licenses that otherwise would expire or be revoked under the circumstances presented here.  Zoning and licensing are matters particularly within the local power of states and municipalities, and federal courts routinely defer to that authority.  See Larkin v. Grendel's Den, Inc., 459 U.S. 116, 121-22 (1982) (noting traditional "judicial deference to the legislative exercise of zoning powers by a city council or other legislative zoning body is especially appropriate in the area of liquor relegation"); Bryant Woods Inn, Inc. v. Howard County, Md., 124 F.3d 597, 603 (4th Cir. 1997) ("Land use planning and the adoption of land use restrictions constitute some of the most important functions performed by local government.").

Even assuming the Court has the power to entertain the relief requested by the United States, the question remains whether it is appropriate to exercise it in this case.  As an initial matter, if the United States is correct in its argument that it has not

abandoned the legal non-conforming uses of the Crazy Horse Too or that it has two years under the relevant ordinance given rain damage to the property, then the United States does not need extraordinary relief from this Court to stay expiration of the license and permit. Moreover, comity concerns weigh heavily in favor of deference to the City to apply its own licensing and zoning ordinances. No constitutional issue is present here to warrant federal intrusion. The absence of constitutional violations weakens the federal interest compared to the City's strong local interest in zoning, and licensing the sale of liquor or issuing exotic dance permits.

The Court does not take lightly the interest of ensuring the sale of the forfeited Property by the United States generates sufficient funds to satisfy Defendants' restitution obligations under the Plea Agreements. Defendants' restitution obligations are particularly important to Kirk and Amy Henry. The circumstances that brought the Henrys into this case as potential beneficiaries under the Plea Agreements are tragic and undoubtably have motivated the efforts of the United States to maintain the value of the Crazy Horse Too. Indeed, throughout proceedings relating to the forfeited Property over the past two years, every interested party has expressed a desire to see fulfilled the results anticipated for the Henrys under the Plea Agreements. The Court acknowledges the Henrys' compelling circumstances, but that does not warrant the relief requested by the United States particularly where, as here, to do so would require the Court to disregard applicable law and violate fundamental principals of federalism.

Moreover, the Court finds that while it may not have intended to do so, the United States has significantly contributed to the dilemma that brings it to this Court seeking extraordinary relief at the eleventh hour.[1] The United States is the prosecuting

---

[1] The United States did not file the Motion to Stay (Doc. #198) until June 4, 2008, twenty-four days prior to the anticipated expiration deadline of June 30, 2008. Additionally, after the Court scheduled the Motion for hearing on June 19, 2008, the United States moved to

authority who negotiated the Plea Agreements in this case with Defendants with all of its potential benefits and problems.  The United States could have attempted to obtain or extend the license and permits for forfeited property by operating the Crazy Horse Too directly or through a receiver.  It chose not to do so.  Indeed, at the hearing conducted June 23, 2008, the Court sustained the United States' opposition to motions to compel the United States to seek a license from the City for the forfeited property.  In doing so, the Court recognized that it is the prerogative of the United States to decide whether it would seek licensure from the City.  Although the United States is free to exercise its decision-making authority in this regard, and it has, the United States must bear the consequences of its decision.  That the United States has made a policy decision not to preserve the value of the forfeited Property by acting on its own behalf diminishes its request that this Court grant extraordinary relief to do what the United States voluntarily chose not to do.

Additionally, the United States argues that if the Court does not issue an injunction staying the expiration of the Crazy Horse Too's liquor license and exotic dance permit beyond June 30, 2008, the Court should at a minimum grant declaratory relief providing that the United States has not abandoned the legal non-conforming use of the forfeited Property.  Such a declaration would be equivalent to an injunction and would involve the same federalism and comity concerns addressed above.  Moreover, such declaratory relief would amount to an advisory opinion on an issue which is not yet ripe for adjudication.

Ripeness has both constitutional and prudential components.  Alaska Right To Life Political Action Comm. v. Feldman, 504 F.3d 840, 849 (9th Cir. 2007).  Where an action seeks to challenge a law or regulation prior to enforcement, the

---

continue the hearing until June 24, 2008 (Doc. #206).  As a result, a hearing on the United States Motion to Stay was not conducted until a week prior to the June 30th expiration date.

-6-

constitutional ripeness inquiry determines "(1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." <u>Id.</u> Prudential ripeness considers the fitness of the issues for judicial review and the hardship to the parties of withholding the court's consideration. <u>Id.</u> That the City of Las Vegas, as the primary governmental entity charged with construing the challenged law, has not yet had an opportunity to construe the ordinances at issue weighs against exercising jurisdiction. <u>Id.</u> at 850. By declining the United States' request for declaratory relief, the Court gives the City of Las Vegas the first opportunity to construe the challenged provisions of the Las Vegas Municipal Code if and when a post-June 30, 2008 applicant is presented, and avoids having the Court rule on hypothetical facts.

The Court recognizes full well that the potential expiration of the liquor license and exotic dance permit for the Crazy Horse Too will impact adversely the marketability of the forfeited Property.[2] The Court cannot, however, presage what action may be taken by the City of Las Vegas should a potential purchaser or the United States seek the requisite license and permit. It also is premature to assess what arguments might be offered by the aggrieved applicant in state or federal court should the City articulate reasons for denying such an application. In short, the United States is asking the Court to issue a binding interpretation of a local ordinance based on what might happen in the future and without first giving the City of Las Vegas the opportunity to interpret its own ordinance when confronted with an applicant for licensure. Judicial review concerning these issues is therefore premature.

---

[2] In practical terms, the June 30, 2008 deadline will impact the Property's marketability regardless of this Court's ruling.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS THEREFORE ORDERED** that the United States of America's Motion to Stay the Expiration of the Exotic Dance Use Permit and Tavern License for the Crazy Horse Too (Doc. #198) is DENIED.

DATED:  June 26, 2008.

_____
PHILIP M. PRO
United States District Judge

-8-