**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) Plaintiff, ) ) vs. ) ) POWER COMPANY, INC., doing ) business as THE CRAZY HORSE TOO, ) and FREDERICK JOHN RIZZOLO, ) ) Defendants. ) ) | 2:06-CR-00186-PMP-GWF<br><br>**ORDER** |

  Before the Court for consideration is the Petition of Canico Capital Group, LLC for Ancillary Hearing (Doc. #343), filed on July 8, 2010. Also before the Court is Plaintiff the United States of America's Motion to Dismiss the Petition of Canico Capital Group, LLC (Doc. #344), filed on July 22, 2010. Interested parties Kirk and Amy Henry filed a Response to Canico's Petition (Doc. #345) on July 22, 2010. Canico filed a Reply to the Henrys' Response (Doc. #346) on August 2, 2010. Canico filed a Response to the United States' Motion to Dismiss (Doc. #349) on August 9, 2010. The United States filed a Reply (Doc. #358) on September 15, 2010. The Court held a hearing on these motions on December 21, 2010. (Mins of Proceedings (Doc. #385).)

///

///

## I. BACKGROUND

On June 1, 2006, Defendants Power Company, Inc. ("Power Company") and Frederick John Rizzolo ("Rizzolo") entered Plea Agreements with the United States to resolve certain criminal charges against Defendants. (Plea Mem. [Doc. #7], Plea Mem. [Doc. #8].) Defendant Rizzolo pled guilty to count two of the Information, which charged conspiracy to defraud the United States in violation of 18 U.S.C. § 371. (Plea Mem. [Doc. #8] at 2.) Defendant Power Company pled guilty to count one which charged conspiracy to participate in an enterprise engaged in racketeering activity in violation of 18 U.S.C. § 1962(d). (Plea Mem. [Doc. #7] at 3.) Pursuant to the Plea Agreements, Defendants agreed to forfeit $4,250,000 to the United States under 18 U.S.C. § 1963(a). (Id. at 5.) The Plea Agreements also required Power Company to make restitution to Kirk and Amy Henry in the amount of $10,000,000 upon the sale of the Crazy Horse Too, a strip club owned by Defendants. (Id. at 7.) Defendants further agreed, as part of their Plea Agreements, to sell the Crazy Horse Too within twelve months from the date Defendants entered their plea. (Id. at 8.) This Court subsequently entered an Order of Forfeiture (Doc. #12) forfeiting $4,250,000 to the United States.

Defendants did not sell The Crazy Horse Too within the one-year time frame. On August 15, 2007, the Court granted the United States' motion to substitute the Crazy Horse Too and the real property on which it sits as the forfeited assets, and decreed those assets forfeited to the United States. (Order [Doc. #62]; Min. of Proceedings [Doc. #60]; United States of America's Mot. for this Court to Authorize the Substitution, the Forfeiture, & the Sale of the Substituted Assets & the Distribution of the Sale Proceeds [Doc. #58].) As a result of the substitution of assets and proposed sale, various entities and individuals asserted an interest in the forfeited substitute assets and petitioned for an ancillary hearing to adjudicate their claims thereto. On September 26, 2007, Security Pacific Bank ("Security Pacific") filed its petition for an ancillary hearing (Doc. #75) asserting its interest in the Crazy Horse

Too property as a bona fide purchaser for value without notice that the Crazy Horse Too was subject to forfeiture. Security Pacific's claim was based on a loan made to RICRIZ LLC and secured by the Crazy Horse Too property. The loan had an original principal amount of $5 million, with an unpaid balance of approximately $4.8 million and unpaid interest of approximately $26,000 as of Security Pacific's September 2007 filing. (Doc. #75, Ex. A.) The loan is secured as a first priority lien on the Property. (Id., Exs. A, E.)

The Court adjudicated the ancillary claims, and on June 23, 2008, entered the First Amended Order of Forfeiture (Doc. #222) vesting in the United States all right, title, and interest in the forfeited Property. In the First Amended Order of Forfeiture, the Court affirmed Petitioner Security Pacific's interest in the form of a loan related to the forfeited property, and stated that "the United States can sell clear and good title to the forfeited Property to any subsequent purchaser or transferee and will pay the loan under the order of distribution." (First Amended Order of Forfeiture (Doc. #222) at 8.) The Court set forth the order of priority for the distribution of proceeds upon the sale of the forfeited property. (Id. at 8-9.) Security Pacific was fourth on the priority list. (Id.)

The United States filed a motion to stay foreclosure, asserting the United States could generate a better sales price than a foreclosure auction. (Doc. #122.) Security Pacific did not oppose the motion, "without prejudice to its right to seek relief in the future from any stay entered should circumstances warrant." (Doc. #136.) The Court granted the Government's motion to stay foreclosure. (Doc. #167.)

In October 2008, Security Pacific moved to lift the stay of foreclosure (Doc. #243), which the United States opposed (Doc. #255). Before the Court ruled on the motion, the Federal Deposit Insurance Corporation ("FDIC") moved to substitute itself for Security Pacific as the real party in interest, as the State of California had declared Security Pacific insolvent, and had appointed FDIC as receiver. (Doc. #258 & Exs. thereto.) The FDIC filed a request for a 90-day stay under applicable statutory

authority, which this Court granted in late December 2008. (Doc. #267.) The Court also denied without prejudice Security Pacific's previously-filed motion to lift stay, given the FDIC's appearance in the case. (Doc. #270.)

FDIC sold and assigned to Galaxy Commercial Holding ("Galaxy") a pool of loans, which included the Security Pacific loan to RICRIZ LLC. (Doc. #333, Ex. A at 000062.) The agreement states that Galaxy was purchasing the pooled loans at 52% of their face value. (Id. at 000056.) Galaxy thus purchased the RICRIZ loan for $2,523,573.67. (Id.)

On March 9, 2010, petitioner Canico Capital Group, LLC ("Canico") moved to lift the stay on Security Pacific's right to foreclose. (Doc. #283.) This was Canico's first official appearance in this action. Canico attached to its initial request to lift stay the Security Pacific note plus several allonges thereto. The allonges are (1) from Security Pacific to Federal Home Loan Bank of San Francisco which is undated; (2) from FDIC to Olympic Capital Venture, LLC ("Olympic") dated June 9, 2009; and (3) from Olympic to Canico on July 23, 2009. Additionally, Canico attached an assignment of beneficial interest in the deed of trust from FDIC as Security Pacific's receiver, to Olympic. In response, the United States moved to dismiss Canico as a petitioner (Doc. #315) and the Henrys joined in those arguments. Among the Government's arguments was that an entity named Galaxy, not Olympic, actually had purchased the loan from the FDIC.

In response to the Government's and the Henrys' objections that Canico had not established its rights in the property, Canico presented new evidence to explain how the loan moved from FDIC to Galaxy to Olympic to Canico. Canico presented an assignment agreement between Galaxy, Abraham Assil ("Assil"), and Olympic dated April 16, 2009. (Doc. #319 & Exs. thereto.) Under that agreement, Galaxy agreed to act on behalf of Assil and an unnamed buyer company to buy the loan pool being sold by the FDIC. Upon purchasing the loans, Galaxy simultaneously was to transfer the loans to the unnamed buyer company. Galaxy was the single member of Olympic, a

-4-

newly formed company which was designated as the unnamed buyer company. Galaxy assigned all of its rights in the loans to Olympic, and assigned one hundred percent of its member interest in Olympic to Assil. Assil stated in an affidavit dated April 8, 2010 that Canico now is the owner of the loan. (Doc. #310, Ex. B.)

In response to the Government's motion to dismiss, the Court ruled that Canico had not followed the forfeiture process as required under 18 U.S.C. § 1963(l), but because it was unclear from the statute that Canico needed to comply with those provisions, the Court permitted Canico an opportunity to properly file a petition claiming an interest in the forfeited property. (Doc. #342.) The Court also denied without prejudice Canico's motion to lift the stay of foreclosure, pending Canico filing a petition and establishing it has a property interest to enforce.

Canico's petition under § 1963(l) is now before the Court. Canico asserts that it stands in the shoes of Security Pacific, seeks an adjudication of its interest in the property, and seeks a lift of the stay of foreclosure. The United States responds by moving to dismiss Canico's petition, raising a host of arguments regarding standing, Canico's compliance with § 1963(l), whether Canico has established it owns the loan, and if so, whether Canico can stand in Security Pacific's shoes in line of priority. The Henrys join in the United States' arguments.

Canico generally argues that as assignee on the note and deed of trust, it stands in the shoes of Security Pacific, including its place of priority. In response to Canico's petition, the Henrys and the United States challenge whether Canico adequately has established Canico's interest in the property as a factual matter. The United States in particular challenges Canico's evidence as unauthenticated and hearsay and notes that Canico has changed its story as to how it came to obtain the loan. The United States thus argues Canico's documents and affidavits are unreliable.

In its motion to dismiss, the United States argues that under § 1963(l)(6)(A) and (B), Canico must show it either had superior title to the property or was a bona fide purchaser for value without notice. The United States argues that because Canico

undisputably did not obtain an interest in the property until 2009, it does not have superior title to either Rizzolo or the United States. The United States also argues that because Canico knew by then that the property was forfeited, it is not a bona fide purchaser without notice. The United States and the Henrys argue that Canico's priority position is determined by Nevada state law, and under Nevada law, a party is entitled to equitable subrogation, and to therefore step into the same priority position, where it pays in full the prior debt. The United States and the Henrys contend that because Canico bought the Rizzolo debt at a discount, it did not fully pay off the debt, and junior interest holders would be prejudiced because Canico will hold a foreclosure sale where it will credit bid the amount of its own interest and everyone down the line will get nothing.

Canico responds that it has superior title because it steps into Security Pacific's shoes, and this Court already has determined Security Pacific has superior title. Canico contends equitable subrogation does not apply here because Canico did not pay off the debt. Rather, it is the assignee of the original note holder. Canico contends that as assignee, it is entitled to step into the priority position of the assignor. Canico also contends it is a bona fide purchaser because at the time it purchased the loan from FDIC, the government owned the property. Canico also contends that while the underlying property was subject to forfeiture, the loan was not, and thus Canico bought the loan without notice it was subject to forfeiture.

**II. DISCUSSION**

**A. Canico's Property Interest**

To support its claim, Canico provides a declaration from Assil, who asserts Canico is the current holder of the note. (Doc. #310, Ex. B.) Canico also provides an assignment agreement wherein Galaxy assigns to Olympic its interest in the loan, and assigns to Assil its interest in Olympic. (Doc. #319, Ex. A.) The United States challenges this exhibit as unauthenticated, and it is not authenticated. Nevertheless, the actual allonge attached to the note runs from FDIC, signed by Vincent Yeung of

Galaxy as attorney-in-fact for FDIC, to Olympic. Olympic then executed an allonge making the note payable to Canico. A third party petitioner must establish its property interest by a preponderance of the evidence 18 U.S.C. § 1963(l)(6). Canico has done so via the allonges attached to the note and Assil's declaration.

### B. Canico's Position In the Order of Distribution

The parties dispute whether equitable subrogation applies, or whether by virtue of assignment, Canico can step into Security Pacific's shoes. The United States and the Henrys argue that because Canico did not acquire and record its interest in the property until after everyone else had acquired and recorded their interests, Canico is last in priority unless it can step into Security Pacific's shoes. The United States and the Henrys contend the only way Canico can do this under Nevada law is through equitable subrogation. The United States and the Henrys argue equitable subrogation does not apply here because Canico did not fully pay off the loan, instead buying it at a discount. Canico responds that it steps into Security Pacific's shoes through assignment, and equitable subrogation does not apply where the note is assigned, rather than paid off.

Determining Canico's property rights is a matter of state law. United States v. Nava, 404 F.3d 1119, 1127 (9th Cir. 2005) (noting state law determines whether a third party claimant has a property interest, "but federal law determines whether or not that interest can be forfeited." (quotation omitted)). Nevada has adopted the Restatement (Third) of Property: Mortgages, section 7.6, which provides that "a lender whose loan proceeds were used to pay the balance of a prior note is equitably subrogated to the former lender's priority lien position so long as an intervening lienholder is not materially prejudiced." Am. Sterling Bank v. Johnny Mgmt. LV, Inc., --- P.3d ----, 2010 WL 4246894, *1 (Nev. 2010) (en banc). A party is entitled to equitable subrogation "when it pays the entire loan of another as long as the [party] was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will

not materially prejudice the holders of intervening interests in the real estate."
Houston v. Bank of Am. Fed. Sav. Bank, 78 P.3d 71, 74 (Nev. 2003) (quotation omitted); see also Restatement (Third) of Property: Mortgages § 7.6(a) ("One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.").

As Nevada has explained it,

> Ordinarily, when a senior deed of trust is satisfied, the junior lienholders remain in their respective order of priority and are consequently elevated up the priority line. Equitable subrogation interrupts this procedure and permits a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. It acts as an exception to modern recording statutes and enables a later-filed lienholder to leap-frog over an intervening lien [holder]. The practical effect of equitable subrogation is a revival of the discharged lien and underlying obligation and assignment to the payor or subrogee, permitting the subrogee to enforce the seniority of the satisfied lien against junior lienors.

Am. Sterling Bank, 2010 WL 4246894, *3 (internal citations and quotations omitted).

Equitable subrogation thus "has the effect of an assignment of the discharged lien," but it is an equitable assignment, and thus will not be granted "if it will result in injustice or prejudice to an intervening lienor." Id. at *4; Laffranchini v. Clark, 153 P. 250, 252-53 (Nev. 1915) (referring to subrogation as an "equitable assignment"(quotation omitted)); see also Restatement (Third) of Property: Mortgages § 7.6 cmt. a ("The effect of subrogation is to assign the mortgage and the obligation to the person performing . . . by operation of law, rather than discharging them."). With respect to a contractual, as opposed to equitable, assignment, "where a valid assignment of a mortgage has been consummated with proper consideration, the assignee is vested with all the powers and rights of the assignor." Mort v. United States, 86 F.3d 890, 894 (9th Cir. 1996) (applying Nevada law); see also Commercial Credit Corp. v. Matthews, 365 P.2d 303, 310 (Nev. 1961) ("The assignee is entitled to

priority over the claims of subsequent creditors of the assignor, even those creditors who become such without notice of the assignment.").

Equitable subrogation applies only where the subsequent lender's funds are used to pay off a prior debt. That is not the case here. Canico never paid off the underlying debt RICRIZ LLC owed to Security Pacific. Rather, Canico is the assignee of Security Pacific, through FDIC and Olympic, by virtue of a written assignment. Generally under Nevada law, the assignee takes all the rights of the assignor, including its priority position. Consequently, Canico steps into Security Pacific's shoes as its assignee, including its priority position. The Court therefore will grant Canico's petition and place Canico into Security Pacific's priority position under the Second Amended Order of Forfeiture.

**C. Request to Lift Stay**

Canico requests the Court lift the stay of foreclosure and permit Canico to initiate foreclosure proceedings under state law. However, Canico cannot foreclose because that would be an action against the United States, which is statutorily precluded. See 18 U.S.C. § 1963(i); U.S. v. Phillips, 185 F.3d 183, 187-88 (4th Cir. 1999); U.S. v. MacInnes, No. 04-50494, 223 Fed. Appx. 549, 552-53, 2007 WL 295451, *3 (9th Cir. Jan. 26, 2007) (unpublished). Further, the Court concludes that Canico cannot support a takings claim under the Fifth Amendment to the Constitution, as the United States has not acted pursuant to its eminent domain powers. See Bennis v. Mich., 516 U.S. 442, 452-53 (1996); Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331 (Fed. Cir. 2006); United States v. Segal, 432 F.3d 767, 779 (7th Cir. 2005).

On the other hand, there are non-forfeitable third party interests in the property, which are non-forfeitable as a matter of law. See Nava, 404 F.3d at 1124. The United States cannot hold the property forever without effecting a de facto forfeiture of innocent third party interests, and is, practically speaking, forfeiting Canico's security interest in the property. At some point, the Government's retention of non-forfeitable

third party interests becomes a due process violation. Cf. Acadia Tech., Inc., 458 F.3d at 1333-34 (recognizing a property owner "has a due process right to have the government either return the property or initiate forfeiture proceedings without unreasonable delay"). The Racketeer Influenced and Corrupt Organizations Act "should be liberally construed to effectuate its remedial purposes." Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (quotation omitted). One of those purposes is the protection of innocent third party interests in property forfeited under § 1963. See 18 U.S.C. §§ 1963(f) & (g)(4) (authorizing the Attorney General to dispose of the property by any commercially feasible means, "making due provision for the rights of innocent persons"); Id. § 1963(l) (permitting innocent third parties to assert non-forfeitable interest in forfeited property); Nava, 404 F.3d at 1124.

The Court concludes that time has come. The United States has had a reasonable opportunity to sell the property. Regardless of the reasons, it has not been able to do so. There does not appear to be a reasonable likelihood the United States will be able to sell the property through a negotiated sale in the foreseeable future. The Court therefore will impose a deadline by which the property must be sold.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that the Petition of Canico Capital Group, LLC for Ancillary Hearing (Doc. #343) is hereby GRANTED to the extent that the Second Amended Order of Forfeiture is hereby amended to reflect that Canico Capital Group, LLC is substituted for Security Pacific Bank and retains Security Pacific Bank's priority position.

IT IS FURTHER ORDERED that the United States of America's Motion to Dismiss the Petition of Canico Capital Group, LLC (Doc. #344) is hereby DENIED.

IT IS FURTHER ORDERED that the United States shall sell the Crazy Horse Too on or before May 3, 2011, by any lawful means including public auction, and in a manner which is consistent with the Plea Agreement in this case. Counsel for the parties having an interest in the subject property shall forthwith meet and confer and

shall, on or before January 24, 2011, file with the Court a Joint Statement setting forth the agreed upon process for effecting the sale by the deadline imposed, or if they cannot agree to such a process, shall offer their alternative proposals by which to accomplish the sale.

IT IS FURTHER ORDERED that the United States shall provide to Canico Capital Group, LLC an accounting of rents collected and expenses paid with respect to the Crazy Horse Too by January 24, 2011.

DATED: December 22, 2010

                                       PHILIP M. PRO
                                       United States District Judge